ALEX SCHECHTER CORP. *v.* UNITED STATES

No. 4532.—Invoices dated Paris, France, October 17, 1933, etc.
Entered at New York, October 30, 1933, etc.
Entry No. 37133, etc.

(Order restoring cases to docket, dated March 2, 1939)

*Sharretts & Hillis* (*Arthur L. Tallman* of counsel) for the plaintiff.
*Webster J. Oliver*, Assistant Attorney General (*Daniel I. Auster*, special attorney), for the defendant.

McCLELLAND, Presiding Judge: These are appeals to reappraisement from values found by the United States appraiser at the port of New York on dressed and dyed coney skins imported from France.

From the record it appears that the merchandise and the facts in relation to its acquisition by the importer are the same as in the case of *Alex Schechter Corp.* v. *United States*, decided by me and reported in Reap. Dec. 3736. My decision was affirmed on appeal by the Third Division of this court in *United States* v. *Alex Schechter Corp.*, Reap. Dec. 3960, which in turn was affirmed on appeal by the Court of Customs and Patent Appeals in *United States* v. *Alex Schechter Corp.*, 25 C. C. P. A. 107, T. D. 49240. It was determined in that case that United States value, as defined in section 402 (e) of the Tariff Act of 1930, was the proper basis of value for such skins, and it was also determined that the merchandise had been acquired by purchase.

United States value is defined in section 402 (e), *supra*, as follows:

The United States value of imported merchandise shall be the price at which such or similar imported merchandise is freely offered for sale, packed ready for delivery, in the principal market of the United States to all purchasers, at the time of exportation of the imported merchandise, in the usual wholesale quantities and in of the ordinary course of trade, with allowance made for duty, cost of transportation and insurance, and other necessary expenses from the place of shipment to the place of delivery, a commission not exceeding 6 per centum, if any has been paid or contracted to be paid on goods secured otherwise than by purchase, or profits not to exceed 8 per centum and a reasonable allowance for general expenses, not to exceed 8 per centum on purchased goods.

The basic United States values of the merchandise in issue, that is to say—

—the price at which such or similar imported merchandise [was] freely offered for sale, packed ready for delivery, in the principal market of the United States to all purchasers, at the time of exportation of the imported merchandise, in the usual wholesale quantities and in the ordinary course of trade—

were the *per se* entered values. From these values the appraiser deducted 2 per centum cash discount and 3 per centum charges, presumably including "the cost of transportation and insurance, and other necessary expenses from the place of shipment to the place of delivery," and 30 per centum duty. Since the merchandise was acquired by purchase the only question remaining to be decided is the amounts deductible for profit and general expenses.

In arriving at the amounts to be allowed for general expenses and profit under the statute, counsel seem to have agreed that the general expenses and profit made by the plaintiff corporation on merchandise such as that in issue may be used as a basis. For the purpose of establishing the facts with relation to such expenses and profit plaintiff called to the stand one William F. Malone, who identified himself as a certified public accountant, and who testified that he had audited the books of the plaintiff corporation since its organization. Mr. Malone produced a statement which he testified he had prepared from the books of the plaintiff corporation which was offered and received

in evidence without objection as Exhibit 1. Supplementing this evidence is the testimony of Mr. Malone given in the matter of reappraisement 109404–A, *Alex Schechter* v. *United States*, which was decided in Reap. Dec. 3736, etc., *supra*, and a similar statement made by Mr. Malone which formed part of Exhibit 1 in that case, the record in which was incorporated, without objection, as part of the record herein.

Each of the statements purports to show the amount of sales made by the plaintiff during certain periods, the general expenses of the business, and the net profits realized. Exhibit 1 in reappraisement 109404–A covers the period from November 1933, to and including February 1934. Exhibit 1 in the instant case covers the period from November 1, 1934, to July 31, 1935. It will be seen, however, that for the period between March 1, 1934, to October 31, 1934, no evidence has been offered to show the general expenses or profit realized, nor is there any such evidence for the period preceding November 1933.

Examination of the official papers discloses that the dates of exportation run from October 17, 1933, to July 2, 1935, and that of twenty-five appeals here. involved the dates of exportation of the merchandise covered by nineteen fall within the periods for which no evidence as to general expenses or profit has been offered.

That the general expenses and profit varied during those periods is evident from a comparison of Exhibit 1 in reappraisement 109404–A and Exhibit 1 in the instant cases, and also from the testimony of Mr. Malone as follows:

By Mr. TALLMAN:

Q. As I recollect, from the statement you furnished in the test case for that period of months, I believe that, roughly, showed a profit in excess of 20 per cent, and overhead of something over 5 per cent, whereas this most recent and later statement shows a considerable change. In other words, the profit has dropped down sharply, and the overhead has risen a little bit. Does that indicate to you a falling off, or a change in business conditions?—A. That would indicate very probably a drop in the sales, and increase in expenses.

In *United States* v. *American Aniline Products, Inc.*, 22 C. C. P. A. 380, T. D. 47399, it was held that profit for the purposes of section 402 (d) of the Tariff Act of 1922, which was identical in form and language with section 402 (e) of the Tariff Act of 1930, is the usual profit made in dealing in the merchandise involved. This statement holds true also with reference to general expenses.

Manifestly, it would be difficult, if not impossible, from an accounting standpoint, to establish the usual general expenses and profit made in dealing in a particular commodity on a given date of exportation of imported merchandise for the purposes of section 402 (e), *supra*, but on the other hand, such general expenses and profits should be established with reasonable certainty. It can scarcely be claimed

in the face of the record that the general expenses and usual profit which were current during the period from November 1933, to and including February 1934, as evidenced by Exhibit 1 in the incorporated case, indicate with reasonable certainty the general expenses and profit which were current during the period from April to October 1934, as to which period no evidence was offered. Exhibit 1 in the instant cases, which purports to show general expenses and profit during the period from November 1, 1934, to July 31, 1935, is not applicable to importations made during the period from April to October 1934, since as to such importations those expenses and profits were prospective.

Since I am without evidence as to the general expenses and usual profit made in dealing in such merchandise during the time of exportation of the greater part of the shipments in issue, it is obvious that it is impossible for me on the present record to determine the value of the merchandise covered thereby, as under the terms of the statute I am required to do.

Referring to the remaining appeals, I find that Exhibit 1 in the instant cases covers the period during which the merchandise involved in reappraisements 110298–A, 110341–A, 114006–A, 114009–A, and 114010–A was exported to the United States. Most of the items appearing thereon are in general similar to those shown on Exhibit 1 in the incorporated case. There are two items, however, which appear on Exhibit 1 herein which do not appear on Exhibit 1 in the incorporated case, and which would seem to require some explanation. These are "Drawings Alex Schechter, $4,024.09," and "Provision for Bad Debts, $1,723.60," the former appearing as an expense and the latter as a charge against operating profit.

Referring to the first item mentioned the witness Malone testified:

It was against salary, and we considered it an expense for business this year.

A separate item for "Salaries help" appears on Exhibit 1. The nature of the position occupied by Alex Schechter is not made clear in the record. If he was an officer of the corporation it would seem that authority for the payment of the salary should be shown, especially in view of the fact that such a separate item does not appear in the statement covering the prior period which is Exhibit 1 in the incorporated case.

Exhibit 1 in the instant case shows an item as a charge against operating profit of "Bad Debts Written Off, $4,326.72," and in addition thereto the item referred to above of "Provision for Bad Debts, $1,723.60." While the former appears to be a reasonable charge against profits, I am of the opinion that some explanation should be made of the basis upon which the latter charge was arrived at.

It therefore appears that the only appeal herein which is sup-

ported by sufficient evidence upon which a finding of United States value might be made is reappraisement 109759–A, since the date of exportation of the merchandise covered by that appeal falls within the period covered by Exhibit 1 in the incorporated case. In view of the fact that the cases were consolidated for the purpose of trial and that I am convinced that the interests of justice would be best served by restoring the other twenty-four appeals to the docket in order to afford both sides an opportunity to present evidence in accordance with the views herein expressed, in the interests of preserving a clear record I make that order applicable to all of the appeals herein.